**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GUILLERMO NAJAR LOPEZ, <br><br> Petitioner, <br><br> v. <br><br> TODD BLANCHE, ET AL., <br><br> Respondents. | Case No. 5:26-cv-3045-MAR <br><br> **ORDER ON PETITION FOR HABEAS CORPUS** |

**I.**

**PROCEDURAL HISTORY**

On June 3, 2026, Petitioner Guillermo Najar Lopez ("Petitioner"), an immigration detainee, filed, through counsel, a Petition for Writ of Habeas Corpus by a Person in Federal Custody Under 28 U.S.C. § 2241 (the "Petition"), challenging his detention at the Adelanto ICE Processing Center. Dkt. 1 ("Pet."). On June 10, 2026, Respondents filed an Answer to the Petition. Dkt. 8. Petitioner filed a Reply. Dkt. 9 ("Reply"). **For the reasons set forth below, the Court GRANTS the Petition and ORDERS that Petitioner be immediately released from custody.**

## II.

## FACTUAL BACKGROUND

The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition.  Dkt. 1.  Respondents had the opportunity to dispute these facts or provide additional facts, but declined to do so.  Dkt. 8.  Therefore, the Court considers the following facts to be undisputed and conceded for purposes of ruling on the Petition.  See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

Petitioner is a Mexican citizen who was detained on April 20, 2026, on his way to work.  Pet. at 2.  Petitioner was detained during a "targeted enforcement operation" for a different individual.  Answer, Dkt. 8-2 at 2.  Respondents stopped Petitioner because he matched the physical appearance of the target and was in the vicinity of the target's last known address.  Id.  Prior to his detention, Petitioner continuously resided in California since 2008.  Pet. at 2.  During that time, Petitioner was an active member of his community.  See id., Dkts. 1-5–1-7.  Petitioner has three children, two who are United States citizens and one who has been granted deferred action under Deferred Action for Childhood Arrivals ("DACA").  Petitioner has no criminal history.  Id. at 2.  Petitioner is currently detained at the Adelanto ICE Processing Facility.  Id.  Petitioner has not received an individualized bond hearing.  Reply at 4.

## III.

## PETITIONER'S CLAIMS

Petitioner alleges that his detention violates the Due Process Clause of the Fifth Amendment because the government cannot meet its burden to establish that Petitioner is a danger to the community or a flight risk.  Pet at 7.  Petitioner also alleges that his detention violates the Administrative Procedure Act because it is arbitrary, capricious, an abuse of discretion, and violates the INA and the Fifth Amendment.  Id. at 8–9.

Petitioner seeks immediate release from custody.  Id. at 9.  In the alternative, Petitioner seeks a bond hearing by this Court or a constitutionally compliant bond hearing.

Respondents argue that Petitioner cannot establish that Respondents lacked authority to detain Petitioner.  Answer at 2.  They also argue that Petitioner is scheduled for a hearing before an Immigration Judge and is therefore "being provided with an alternative remedy requested in the Petition."  Id. at 3.

**IV.**

**LEGAL STANDARD**

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  See U.S. Const., amend. V.  There is no question that these protections extend to noncitizens present in the United States.  See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)).  Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ."  Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation."  Zinermon v. Burch, 494 U.S. 113, 127 (1990).  Indeed, the Due Process Clause provides both procedural and substantive protections.  See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)).  To determine whether detention violates

3

procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976).  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)).  Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights."  Regino, 133 F.4th at 959-60.  Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest."  Reno v. Flores, 507 U.S. 292, 302 (1993).  By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests."  Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted).  To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest."  Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted).  With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed."  Khachatryan v. Blinken,

4

4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

V.

**ANALYSIS**

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690.  It is undisputed that Petitioner has been living in the United States since at least 2008 and that prior to his detention, Petitioner resided in California and was an active member of his community and church.  See Dkt. 1-6, 1-7 (Letters of Support).  Petitioner has no criminal record and there are no allegations that Petitioner is a flight risk.  Petitioner has three children who live in the United States, two of whom are United States citizens.  See Dkt. 1-9.  Based on these undisputed facts, the Court concludes that Petitioner developed a substantial liberty interest in remaining out of custody based on the life he built in the United States since arriving here in 2008.  See, e.g., Tinoco v. Noem, 2025 WL 3567862, at *6 (E.D. Cal. Dec. 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.").  This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Therefore, the Court concludes that Petitioner's detention on April 20, 2026, without a warrant, pre-deprivation hearing, or timely custody determination, violated Petitioner's procedural due process rights.  See, e.g., J.A.E.M. v. Wofford, 812 F. Supp. 3d 1058, 1071 (E.D. Cal. 2025) ("On balance, the Mathews factors show that petitioner

is entitled to a bond hearing, which should have been provided before she was detained.  The root requirement of the Due Process Clause is that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest." (internal quotation marks and brackets omitted)); Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026).

Petitioner was arrested without a warrant, and there is no evidence in the record that Respondents complied with 8 C.F.R. § 287.3 which states that in the event of a warrantless arrest "a determination will be made within 48 hours of the arrest, except in the event of an emergency or other extraordinary circumstance in which case a determination will be made within an additional reasonable period of time, whether the alien will be continued in custody or released on bond or recognizance."  See Reply at 3–5.  Moreover, it is undisputed that since being detained, Petitioner has not received an individualized bond hearing or custody determination.  While Respondents contend that Petitioner has received a hearing before an Immigration Judge, and therefore that Petitioner has been "provided with an alternative remedy requested in the Petition," it is unclear to this Court how a master calendar hearing satisfies the due process requirements at issue in this Petition.  Answer at 3; Dkt. 13 at 2.  The regulations enacting the INA specifically maintain that requests for "custody or bond" are "separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding."  8 C.F.R § 1003.19(d); Escobar Salgado v. Mattos, 809 F. Supp. 3d 1123, 1153–54 (D. Nev. 2025).  Therefore, it is unclear how a master calendar hearing could provide Petitioner with due process regarding his custody or mitigate the substantial risk of erroneous deprivation of his liberty.

Given this violation of Petitioner's due process rights, the Court further concludes that "Petitioner's release is necessary to return him to the status quo."  Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025).  The status quo

is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted).  The last uncontested status here is Petitioner's release from custody.  See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy."  Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained.  See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)). Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community.  See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) ("On balance, the

7

Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

Finally, the Court notes that Respondents admit that Petitioner appears to be a member of the Bond Eligible Class certified in Maldonado Bautista v. Santacruz, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025), reconsideration granted in part, 2025 WL 3713982 (C.D. Cal. Dec. 18, 2025), and amended and superseded on reconsideration, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025). Dkt 8-3. On December 18, 2025, the court in Maldonado Bautista entered final judgment and granted declaratory relief to all members of the Bond Eligible Class. See Bautista v. Santacruz, 2025 WL 3713987, at *32 (C.D. Cal. Dec. 18, 2025), judgment entered sub nom. Maldonado Bautista v. Noem, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025). Pursuant to the final judgment entered in Maldonado Bautista, "the Bond Eligible Class members are detained under 8 U.S.C. § 1226(a), are not subject to mandatory detention under § 1225(b)(2), and are entitled to consideration for release on bond by immigration officers and, if not released, a custody redetermination hearing before an immigration judge." Maldonado Bautista v. Noem, 2025 WL 3678485, at *1 (C.D. Cal. Dec. 18, 2025). On March 6, 2026, the Ninth Circuit administratively stayed the December 18, 2025 declaratory judgment in Maldonado Bautista "insofar as [it] extends beyond the Central District of California" pending a ruling on the Government's motion for a stay pending appeal. Maldonado Bautista v. Dep't of Homeland Sec., No. 26-1044, Dkt. 5 at 1 (9th Cir. Mar. 6, 2026). Thus, the December 18, 2025 declaratory judgment remains effective and enforceable within the Central District of California.

Accordingly, the Court concludes that Petitioner is detained pursuant to 8 U.S.C. § 1226(a) and is not subject to mandatory detention under § 1225(b)(2). See Maldonado Bautista, 2025 WL 3678485, at *1. Indeed, the statutory basis of Petitioner's detention may become relevant to any future determination of Petitioner's suitability for release on bond, should he be detained in the future. Moreover,

Petitioner is entitled to an individualized bond hearing pursuant to 8 U.S.C. § 1226(a). See id. However, Petitioner is also entitled to immediate release from custody based on the violation of his procedural due process rights, as explained above.

The fact that Petitioner could receive a post-deprivation bond hearing while in custody does not remedy the violation of Petitioner's procedural due process rights. See, e.g., E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); Domingo v. Kaiser, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention."). Indeed, "an increasing wave of district courts have concluded[] [that] a post-hoc bond hearing cannot support [a] [p]etitioner's continued detention when the underlying arrest, revocation of parole, and re-detention were in violation of [the] [p]etitioner's due process rights and, thus, invalid." Orellana, Rivera v. J. Johnson, 2026 WL 1390433, at *1 & n.2 (C.D. Cal. May 14, 2026) (citing Mumaev v. Semaia, 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026); Charaf v. Rios, 2026 WL 1270754, at *1 (C.D. Cal. May 5, 2026); Morales v. U.S. Immigr. and Customs Enf't, 2026 WL 1026234 (C.D. Cal. Apr. 15, 2026); Osmel v. D. Marin, 2026 WL 1209477, at *3 (C.D. Cal. Apr. 29, 2026); Singh v. Janecka, 2026 U.S. Dist. LEXIS 95798, at *16–17 (C.D. Cal. Apr. 29, 2026)). Thus, the Court declines to recommend a post-deprivation bond hearing as the remedy for the violation of Petitioner's procedural due process rights in this case.

## VI.

## ORDER

IT IS ORDERED: (1) the Petition is GRANTED; (2) Respondents are directed to immediately release Petitioner **Guillermo Najar Lopez (A-Number 248-000-991)**

from custody subject only to conditions of release that were in place prior to his detention on April 20, 2026 (if any); (3) Respondents are directed to immediately return any confiscated property and documents to Petitioner upon release; (4) Respondents are ordered not to re-detain Petitioner without providing at least seven (7) days' notice and a pre-deprivation bond hearing before an Immigration Judge at which the Government bears the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community (for the avoidance of doubt, the Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard); (5) Petitioner is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2); (6) Respondents are ordered to file a notice of compliance within forty-eight hours of this Order.

DATED: July 13, 2026

HON. MARGO A. ROCCONI
UNITED STATES MAGISTRATE JUDGE

10